UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-80227-CR-Ryskamp/Hopkins(s)



UNITED STATES OF AMERICA

v.

ROBERT BENJAMIN BREWSTER,

    Defendant.
_____/

## *PLEA AGREEMENT*

The United States of America and ROBERT BENJAMIN BREWSTER (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Count One of the Superseding Indictment, which charges the defendant with conspiracy to possess with intent to distribute 28 grams or more of a mixture and substance containing a detectable amount of cocaine base, commonly known as crack cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

2. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that

the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense(s) identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.   The defendant is also aware that the guidelines do not provide for parole.

3.      The defendant also understands and acknowledges that the Court must impose a statutory minimum term of five (5) years imprisonment up to a statutory maximum term of forty (40) years imprisonment, followed by a term of supervised release of at least four (4) years up to life.  In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $5 million dollars.

4.      The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant.  The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.  If the defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

5.      In exchange for the undertakings made by the defendant in this plea agreement, the government agrees not to file its notice of sentencing enhancement, pursuant to Title 21, United States Code, Section 851, which would subject the defendant to a mandatory term of ten years imprisonment up to a maximum term of life imprisonment.

6. The United States and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court impose a sentence at the low end of the advisory guideline range.

7. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

8. The United States agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government and the court to allocate their resources efficiently. The United States, however, will not be required to make this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a

state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

9. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged above, that the defendant may not withdraw the defendant's plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

10. The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b). However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above

waiver of appellate rights. By signing this agreement, the defendant acknowledges that he has discussed the appeal waiver set forth in this agreement with his attorney. The defendant further agrees, together with the United States, to request that the district court enter a specific finding that the defendant's waiver of his right to appeal the sentence to be imposed in this case was knowing and voluntary.

11. The defendant acknowledges that he has fully discussed the matters of this plea agreement and his guilty plea pursuant thereto with his attorney, and that his attorney has answered each of his questions about the strength of the government's case as well as the following rights: to go to trial, to cross-examine the government's witnesses, to testify in his own behalf, to not be compelled to provide self-incriminating testimony, to call witnesses for the defense, and to appeal any adverse verdict that may result from a trial. The defendant further acknowledges that he is fully satisfied with the representations provided by his attorney.

12. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings between the parties.

|  |  | WIFREDO A. FERRER<br>UNITED STATES ATTORNEY |
|---|---|---|
| Date: 4/15/15 | By: | _/s/_<br>for / RINKU TRIBUIANI<br>ASSISTANT UNITED STATES ATTORNEY |
| Date: 4/7/15 | By: | _/s/_<br>EDWARD SALANTRIE<br>ATTORNEY FOR DEFENDANT |
| Date: 3/30/15 | By: | _/s/_<br>ROBERT BENJAMIN BREWSTER<br>DEFENDANT |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-80227-Cr-Ryskamp/Hopkins(s)

UNITED STATES OF AMERICA

v.

ROBERT BENJAMIN BREWSTER,

Defendant.



FILED by _____ D.C.

APR 15 2015

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## FACTUAL BASIS FOR CHANGE OF PLEA

In 2013, law enforcement initiated an investigation into a drug trafficking organization that operated in and around Lake Worth, Palm Beach County, Southern District of Florida. Specifically, agents received information from multiple sources that Samuel ALVARADO was responsible for distributing large amounts of narcotics.

Based upon various investigative techniques, including controlled purchases of crack cocaine and heroin from ALVARADO, the use of multiple pole cameras, and intercepted jail calls occurring between October 18, 2013 and January 13, 2014 when ALVARADO was in custody at the Palm Beach County jail serving a sentence for fleeing and eluding police, on May 14, 2014, United States District Court Judge Donald M. Middlebrooks signed the first of numerous orders authorizing the interception of wire and electronic communications on phones utilized by ALVARADO, Todd REYNOLDS, Alexander WEBSTER, Sam HENRICY, and Omar VELOZ. Interceptions began in May 2014 and continued through September 2014. Agents intercepted a total of 11,746 pertinent communications.

Robert Benjamin BREWSTER conspired with Samuel Alvarado and others to distribute 28 grams or more of crack cocaine. BREWSTER supplied Samuel Alvarado with both crack cocaine and powder cocaine. In particular, BREWSTER supplied Alvarado with 28 grams or more of powder cocaine, knowing that Alvarado would convert the powder cocaine into crack cocaine, and would then distribute the crack cocaine to Alvarado's own customers. There are approximately 68 pertinent intercepted communications between BREWSTER and Alvarado. The following is a <u>representative</u> sample of these communications:

On May 22, 2014, Alvarado called BREWSTER and said, "I just need a little seven (7)." BREWSTER asked, "You know it's 320, right?" The two agreed to meet. During a follow-up call, Eliezet Velazquez, using Alvarado's phone, called BREWSTER to say that he (Velazquez) was on his way. A few minutes later, BREWSTER called Velazquez and said, "You [expletive] shorted me $24, dog." Velazquez agreed to pay BREWSTER the additional monies. During this transaction, BREWSTER supplied Velazquez with 7 grams of cocaine, which Velazquez picked up for Alvarado.

1

On June 18, 2014, Alvarado called BREWSTER and asked for "A little, a little fourteen (14), man." BREWSTER indicated that he would call Alvarado back. During a follow-up call, BREWSTER told Alvarado, "$350." Alvarado clarified, "For a fourteen (14)?" BREWSTER answered, "Oh no, no, no, seven (7). My bad." Alvarado replied, "Bring me the little one, bring me the seven (7)." BREWSTER agreed. In a later call, BREWSTER phoned Alvarado. Alvarado said, "Shit, I'm right here about to pull in, bro." Alvarado indicated that he had arrived at BREWSTER's house. This transaction was for 7 grams of cocaine.

On July 22, 2014, Alvarado called BREWSTER and said, "Man, you all ain't got no paint (powder cocaine)?" BREWSTER said no. Alvarado responded, "Man, listen ... I don't care what you all dropping in the pot, right? Whatever you drop in the pot, give it to me and let me drop my own." BREWSTER repeated, "There's no paint." Alvarado pleaded, "I'll pay you six for ten grams, eight grams." BREWSTER repeated, "There's no paint." Alvarado then cursed and said, "Well bring me a circle." The two then agreed to meet. During these calls, Alvarado requested powder cocaine so that Alvarado could convert the powder cocaine into crack cocaine. BREWSTER repeatedly indicated that he did not have powder cocaine. Alvarado finally ordered "a circle" (crack cocaine), which BREWSTER agreed to deliver.

On July 24, 2014, BREWSTER called Alvarado and said that he (BREWSTER) was on his way to "check out this guy with this paint." BREWSTER asked if Alvarado wanted any "paint". Alvarado said that he (Alvarado) needed "at least an onion (ounce)." Alvarado added, "If I could get more, can I get more?" BREWSTER asked, "Even if it's that [expletive] bull shit (poor quality cocaine)?" Alvarado replied, "Yeah, I don't give a [expletive]. I can do something, I can, I can handle myself." BREWSTER agreed. During a follow-up call, BREWSTER called Alvarado and stated that he (BREWSTER) purchased "it". Alvarado responded, "Shit, I want the whole thing." BREWSTER asked, "The whole 'O'?" Alvarado affirmed and the two agreed to meet. During this call, BREWSTER conspired to distribute to Alvarado 28 grams or more of powder cocaine, which BREWSTER knew would be converted by Alvarado into crack cocaine. <u>Based on this phone call alone, BREWSTER is responsible for conspiring to possess with intent to distribute 28 grams or more of crack cocaine</u>.

During his arrest in this case, BREWSTER consented to a search of his residence. Agents recovered over 200 grams of powder cocaine inside BREWSTER's residence, of which BREWSTER claimed ownership.

After his arrest, BREWSTER provided a post-*Miranda* videotaped statement. BREWSTER admitted that he conspired with Alvarado and others to distribute 28 grams or more of crack cocaine, and 28 grams or more of powder cocaine, which BREWSTER knew would be converted into crack cocaine. BREWSTER admitted that he had been distributing cocaine and crack cocaine for a very

2

long time. BREWSTER explained to agents the quantities of crack cocaine that he (BREWSTER) sold, and the amounts that he charged his customers.

Date: 4/15/15

By: _____
WIFREDO A. FERRER
UNITED STATES ATTORNEY
for RINKU TRIBUIANI
ASSISTANT UNITED STATES ATTORNEY

Date: 4/15/15

By: _____
EDWARD SALANTRIE
ATTORNEY FOR DEFENDANT

Date: 4/8/2015

By: _____
ROBERT BENJAMIN BREWSTER
DEFENDANT

3